In re VERCO INDUSTRIES, a California Corporation, Debtor.

VERCO INDUSTRIES, a California Corporation, Debtor-in-Possession, Plaintiff-Appellant,

v.

SPARTAN PLASTICS, a Partnership, Ernie J. Beigel, a General Partner, and Cecil Sills, a General Partner, Defendants-Appellees.

BAP No. 80–1042–KDH.

United States Bankruptcy Appellate Panels, Ninth Circuit.

Argued Jan. 22, 1981.

Decided March 13, 1981.

---

Robert A. Greenfield, Stutman, Treister & Glatt, Los Angeles, Cal., for appellant.

C. E. H. McDonnell, Tustin, Cal., for appellee.

Before KATZ, DAVIS and HUGHES, Bankruptcy Judges.

## MEMORANDUM OF OPINION

KATZ, Bankruptcy Judge:

On September 24, 1979 Verco Industries, debtor-appellant, entered into an escrow contract with Spartan Plastics for the sale of certain machinery, tools and a building lease, all which were used in conjunction with the manufacture of 25 pound practice bombs. The consideration for the sale consisted of $125,595 cash, $85,000 worth of castings, $36,860 in a prepaid sublease, the assumption by Spartan of approximately $20,000 in outstanding obligations and a promissory note back to Verco in the amount of $37,110. The sale was completed on December 21, 1979 when Spartan received a bill of sale, an assignment of the building lease, and a covenant not to compete.

On July 23, 1980 Verco filed a petition under Chapter 11 of the Bankruptcy Code. As debtor in possession, pursuant to § 544 of the Bankruptcy Code (11 U.S.C. § 544), Verco sought to invalidate the transfer under California Commercial Code §§ 6101–6111 dealing with bulk transfers and California Civil Code § 3440 relevant to fraudulent conveyances. Verco also sought to enforce the payment of the $37,110 promissory note, pursuant to § 541 of the Code (11 U.S.C. § 541).

After trial the lower court found that the transfers were invalid as against creditors of Verco partly for failure of Spartan to take possession of the property within a commercially reasonable time, as required by California Civil Code § 3440 and partly because of Spartan's failure to comply with the California bulk transfer laws. California Commercial Code §§ 6107, 6105. Having found that the transfers were conclusively presumed fraudulent under California law the court invalidated the transfer and ordered that the debtor-in-possession shall recover the property for the benefit of the estate under 11 U.S.C. §§ 550, 544(b). The court also concluded that because the transfer of property to Spartan was invalidated, Spartan is relieved of its obligation to pay the outstanding $37,100 promissory note to Verco. Verco has appealed the decision of the trial court assigning as error the order relieving Spartan of its obligation under the promissory note.

The sole issue on appeal is whether a transferor may recover the purchase price under a sale agreement when the transfer has been invalidated by the debtor as debtor-in-possession in a bankruptcy proceeding. At oral argument appellee conceded that the violation of bulk transfer law was so broad that the entire transfer could have been invalidated on that ground alone. Therefore the issue will be decided solely in accordance with the operation of the bulk transfer law.

It is the appellant's position that two unrelated causes of action have arisen out of the transaction with Spartan. The first cause of action is that of the debtor to sue for the balance of the purchase price due on the sale agreement under 11 U.S.C. § 541(a). The second cause of action is that of the debtor-in-possession to avoid a fraudulent transfer on behalf of creditors under 11 U.S.C. § 544(b). The appellee contends that where a transfer is invalidated for failure to comply with the bulk transfer laws there is a failure of consideration and the promissory note is rendered unenforcea-

ble. The appellee also argues that the contract is unenforceable because it is a contract made in fraud of creditors. The latter contention of the appellee is without merit and will be dismissed summarily.[1] We therefore turn to the first contentions of the parties.

■ California Commercial Code §§ 6101–6111 provides comprehensive regulation of bulk transfers. Section 6105 places a duty upon the transferee to record and publish a notice containing specified information about the intended bulk transfer. When the transferee fails to give notice any bulk transfer is deemed fraudulent and void against any creditor of the transferor. Cal.Com.Code § 6105.

■ Case law and commentators uniformly agree that as between the original transferor and transferee, failure on the part of the transferee to comply with the bulk transfer law does not render the contract void, nor does it provide a basis upon which to rescind the contract. See *Jeffery v. Volberg*, 159 Cal.App.2d 815, 324 P.2d 964 (1958); *Martinez v. Clemente*, 19 U.C.C. Rep. 652 (N.Y.1976); *Peter Escalle v. Frank Mark*, 183 P. 387 (Nev.1919); 5 A.L.R. 1517, 24 A.L.R.2d 1030; Note, Creditor's Remedies Under Article 6 of the Uniform Commercial Code—A Fifth Circuit Analysis, 10 Cum.L.Rev. 739 (1980). The reason for this rule is that the bulk transfer laws were enacted for the protection of creditors of the transferor and not for the benefit of the transacting parties. *Jeffery v. Volberg*, supra, 159 Cal.App.2d at 818, 324 P.2d 964; *Cooley v. Brennan*, 102 Cal.App.2d Supp. 952, 228 P.2d 104 (1951).

■ The issue before the court is one of first impression. Case law and commentary however support the view that the transferor is still entitled to maintain an action for the price even though the transaction was set aside for violation of the bulk transfer laws. In *Jeffery v. Volberg*, supra, the court held that a party could not refuse to perform under a contract of sale merely because the transferee had not complied with the bulk transfer laws. In so holding the court stated that the bulk transfer statute does not "preclude the seller from recovering the purchase price of a sale made in violation thereof." Id. 159 Cal.App.2d at 818, 324 P.2d 964.

In *Clifton v. Dunn*, 208 Ga. 326, 66 S.E.2d 735 (1951) the court refused to allow rescission of a contract of sale where claims were being made on the transferee by creditors and the bulk transfer laws were not complied with. The court further recognized that even though the contract of sale would not be rescinded the creditors of the transferor could reach the transferred goods by garnishment. Apparently the rule we announce today would not be as harsh on non-complying transferees as could be reached in other jurisdictions.[2] To hold that a non-complying transferee could refuse to pay the purchase price or be allowed a set-off would seem to defeat the purpose of the bulk transfer laws. There would be no risk in noncompliance because a transferee could always claim a reduction in the purchase price or set-off against creditors for any amounts the transferee had already paid.[3] The protection for the transferee is that he is entitled to any pro-

---

1. The appellee relies on *Severance v. Knight-Counihan Co.*, 29 Cal.2d 561, 177 P.2d 4 (1947) for the proposition that an executory contract made in fraud of creditors is unenforceable. The doctrine of *Severance*, supra, is limited however to cases in which there is an actual intent to defraud. The court therein rationalized that when the object of a contract is prohibited by penal law the contract is void. In the present case there was no showing of actual fraud or illegal purpose. The contract was merely ineffective to pass title as against the creditors of Verco. As between the parties the failure to comply with the bulk transfer law

does not effect the validity of the sale. See *Jeffery v. Volberg*, 159 Cal.App.2d 815, 324 P.2d 964 (1958); Cal.Com.Code § 6105.

2. In jurisdictions, other than California (which have adopted Uniform Commercial Code § 6106) a transferee may become liable to pay both the purchase price and all claims of the transferor's creditors. Reforming and Rewriting Article Six of the U.C.C., 81 Com.L.J. 285 (1976).

3. See similar reasoning in *Borland v. Walker*, 7 Ala. 269 (1845).

ceeds in excess of all creditors' claims against the property and a credit against such claims paid to the creditors in the transferor's bankruptcy. *Cornelius v. J. & R. Motor Supply Co.*, 9 U.C.C.Rep. 709 (Ky. 1971).

At oral argument a question arose as to whether a trustee in bankruptcy must elect between invalidating the transfer on behalf of the creditors or suing to enforce a contract for the purchase price on behalf of the debtor. Language in *Matter of Seward Dredging Company*, 39 Am.B.R. 372 (1917) and *J. H. Hincke Printing Company v. C. A. Bailey*, 11 Am.B.R. (N.S.) 500 (1918) would seem to indicate that such an election would need to be made. Both cases basically held that the trustee in bankruptcy stands in the shoes of both the debtor and creditors. The cases further held that where the trustee has two rights to property in his custody, even though they are sometimes different and antagonistic, he can take his choice. These cases however deal with situations where the trustee has two rights to gain title to the same property. It only follows that the trustee can choose either right to the property as there is no need to gain title twice.

■ What we have in the present case is a situation highly distinguishable from the above case. Here we have two causes of action to different property. A trustee in bankruptcy first ascends to the rights of creditors to set aside a non-complying bulk transfer and recover the property for the benefit of the estate. See 11 U.S.C. § 544(b); *Dannig v. Daylin*, 488 F.2d 185, 13 U.C.C.Rep. 691 (9th Cir. 1973); *In re Albany Brick Co., Inc., Leach v. Burns Brick Co.*, 12 U.C.C.Rep. 165 (D.C.Ga.1972); *In re Rome Furniture Mart, Inc.*, 20 U.C.C.Rep. 1009 (D.C.Ga.1976); and secondly acquires all causes of action of the debtor which he is empowered to sue on for the benefit of the estate. 11 U.S.C. § 541(a)(1); R.Bankr. Proc. 610; 4 Collier on Bankruptcy ¶ 541.-10[5].

■ The fact that the debtor herein is a debtor-in-possession does not alter the above stated rights, for a debtor-in-possession holds substantially all the rights, powers and duties of a trustee in a Chapter 11 case. 11 U.S.C. § 1107. Since the trustee or debtor-in-possession holds two separate causes of action in different property we hold that an election need not be made between the two and both causes of action may be prosecuted. Clearly if the debtor would have sued in an action to recover the purchase price only, any pre-transfer creditor of the debtor would be able to proceed in state court to set aside the transfer as against the transferee.

■ In the present case Spartan had a duty to comply with the bulk transfer law and failed to do so. Therefore the risk of loss must be borne by the transferee. It is also evident that Spartan received everything it was promised under the sales contract and therefore there is no failure of consideration.

■ A further issue which must be discussed is whether Spartan is entitled to assert a claim against Verco as a result of the avoidance of the transaction and the collection by Verco of the promissory note.

Cases such as *Buffum v. Barceloux*, 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140 (1933), and *Gelinas v. Buffum*, 67 F.2d 380 (9th Cir. 1933) as well as *Misty Management Corp. v. Lockwood*, 539 F.2d 1205 (9th Cir. 1976), all decided under the Bankruptcy Act of 1898 which seem to stand for the proposition that a transferee whose transfer is avoided, obtains a claim, are distinguishable from this case.

In each of the cases cited immediately above, the transferor/debtor was guilty of an act which made the transfer fraudulent as to creditors, and hence voidable. Here the transferor/debtor did nothing of the kind. In fact the transfer here was avoided solely because of the failure of the transferee to comply with the state law. The transferor is blameless and hence should not suffer.

None of the above cases, nor *In re Hough*, 4 B.R. 217 (Bkrtcy.Cal.1980) hold that the transferee whose transfer is avoid-

ed is entitled to an automatically proved up claim. These cases allow such entity to file a proof of claim and then attempt to sustain it.

Although no set-off was pleaded below, that issue need be disposed of. Section 553 of the Code permits a set-off of mutual debts that arose before the commencement of the case. 11 U.S.C. § 553(a).

Here, we can find no mutual debt. Spartan is indebted to Verco on the promissory note. Verco is not indebted to Spartan for anything, having transferred to Spartan all that was bargained for.

■ The reason Spartan has been deprived of those assets is not because of any act of Verco, but rather as a result of its own negligence. Having failed to comply with the bulk transfer law certain paramount rights are created in favor of third party creditors. The exercise of these rights by a third party cannot create a debt by Verco, let alone a mutual debt.

Had Spartan fully paid the purchase price before the transfer was avoided, it certainly could not have sued Verco for return of the money, nor could it have had the basis of a set-off claim.

We therefore hold that Verco is entitled to judgment on the promissory note against Spartan in the sum of $37,110 and reverse the holding of the trial court, with instructions to enter judgment accordingly.

REVERSED.

HUGHES, Bankruptcy Judge, concurring:

I concur. I write separately merely to express by way of dicta my view of how 11 U.S.C. § 553, providing for offset of mutual debts, may affect the judgment to be entered by the trial court on remand.

The question raised by the two actions below and by this appeal is whether a debtor in possession (or a trustee in bankruptcy) may take judgment on Spartan Plastics' promissory note as well as recover the personal property sold by Verco Industries to Spartan Plastics. I agree that it can. I suggest, however, that the judgment may

be subject to offset in a post-judgment proceeding.

Although we do not know the basis for the trial judge's ruling, it would be supportable in my opinion if he had (1) determined the amount of Spartan's claim against the estate and (2) permitted setoff pursuant to 11 U.S.C. § 553. While setoff is largely a question of law susceptible to resolution by us, the amount of Spartan's claim is a question of fact, which can be determined only in the trial court. Furthermore, allowance of that claim is barred until the property subject to the avoided transfer has been recovered by the estate. 11 U.S.C. § 502(d). That too raises a question of fact that is outside the present record.

A

Spartan Plastics is entitled to a claim against the estate arising from the avoidance of the fraudulent transfer. *Buffum v. Peter Barceloux Co.*, 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140 (1933); *Misty Management Corp. v. Lockwood*, 539 F.2d 1205 (9th Cir. 1976); *Barber v. Coit*, 144 F. 381 (6th Cir. 1906). Both the Ninth Circuit in *Misty* and the Sixth Circuit in *Barber* stated that a rule to the contrary, i. e., denying the fraudulent transferee a claim against the estate, would be inequitable because it would permit the estate to retain the consideration paid for the property as well as recover the property. As Judge Sneed stated in *Misty*, "the transferee guilty of fraudulent behavior may nevertheless prove a claim against the bankrupt estate, once he returns the fraudulently conveyed property to the estate." The Bankruptcy Code recognizes that such claims arise in 11 U.S.C. § 502(h).

The claim is measured by the consideration paid for the property subject to the avoided transfer. *Buffum*, supra; *Misty Management Corp.*, supra. Thus, a person who has surrendered property fraudulently transferred to him may prove a claim for the consideration advanced for the transfer. 4 Collier on Bankruptcy, 15th ed. p. 548–70. Inasmuch as only the bulk sale portion of

the contract was avoided, the claim no doubt will bear the same relationship to the total consideration of $305,765 paid by Spartan Plastics as the value of the bulk sales property bore to the whole of the consideration given by Verco Industries.

### B

The trial judge may permit Spartan Plastics to set-off the foregoing claim against the judgment to be entered on remand if the elements of 11 U.S.C. § 553 are satisfied. In relevant part, section 553 allows "a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor that arose before the commencement of the case . . ."

The estate's claim is based on a note given by Spartan Plastics to Verco Industries before the commencement of the case. Any claim Spartan Plastics can establish that arises from recovery of the fraudulently conveyed property "shall be determined and shall be allowed . . . the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h). Thus the timing elements of section 553 are satisfied.

"To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity." 4 Collier on Bankruptcy, 15th ed. p. 553–22. A claim that is deemed to have arisen before bankruptcy is by necessary implication deemed to have been owed to the estate's predecessor, here Verco Industries. Thus, from a pre-bankruptcy perspective, the two debts were between the same parties in their corporate capacities. "Likewise it has been said that 'mutual' means 'the creditor's debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor'." 4 Collier, supra, p. 553–22, *McDaniel National Bank v. Bridwell*, 74 F.2d 331 (8th Cir. 1934). Spartan's debt under the note is to the estate; Spartan's claim, when fixed, will be against the estate. Mutuality is therefore satisfied.

It is perhaps necessary to emphasize the narrow application of setoff in this analysis.

It does not affect the avoiding powers of a trustee in bankruptcy in any degree. It would be otherwise if Spartan's claim could defeat the estate's invalidation of the bulk sale; this is not possible, however, because the claim is not allowable until the bulk sale property has been surrendered to the estate. 11 U.S.C. § 502(d).