Ernest R. UTLEY, Trustee of the Estate of Prototype Service Co., Inc., a California corporation, Bankrupt, Appellant,

v.

UNITED STATES of America (SMALL BUSINESS ADMINISTRATION), Appellee.

No. 17605.

United States Court of Appeals Ninth Circuit.

June 28, 1962.

Craig, Weller & Laugharn, and Norman E. Stolba, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief, Civil Div., Jordan A. Dreifus, and Robert A. Smith, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal by the Trustee of a bankrupt estate (hereinafter called "appellant") from an Order of the District Court vacating the Referee in Bankruptcy's Amended Findings of Fact, Conclusions of Law and Order Declaring Chattel Mortgage of United States of America, appellee, (hereinafter designated "Small Business Administration") Void, and Modification of and Supplemental Findings of Fact, Conclusions of Law, and Order Declaring Chattel Mortgage of Small Business Administration Void.

The District Court's jurisdiction to review the Referee's Order is under Title 11 U.S.C.A. § 67, sub. c, and this Court has jurisdiction to review the District Court's Order under Title 11 U.S.C.A. § 47.

Proceedings in bankruptcy commenced with the filing of a Voluntary Petition in Bankruptcy by Prototype Service Co., Inc. (hereinafter referred to as "the bankrupt"), a California corporation. Adjudication in bankruptcy occurred on the 6th day of March, 1959, and appellant is the duly appointed, qualified, and acting Trustee of the bankrupt estate. The appellant took possession of the physical assets of the bankrupt. Appellee, on behalf of the Small Business Administration, filed a claim in bankruptcy proceedings in the amount of $13,520.04, with interest, arising out of its chattel mortgage lien against the bankrupt's personal property. Priority was claimed under Section 64, sub. a(5) of the Bankruptcy Act, Title 11 U.S.C.A. § 104, and Title 31 U.S.C.A. § 191.

Appellant sought to avoid the secured claim of the Small Business Administration on the ground that its chattel mortgage was void for non-compliance with the California bulk sales statute, Section 3440.1 of the Civil Code of the State of California. Following a hearing before the referee, the validity of the lien claimed by the Small Business Administration was submitted to the Referee for decision pending the decision of this Court

in the then pending appeal of A. J. Bumb, Trustee in Bankruptcy, etc. v. United States. The parties agreed before the Referee that the decision of this Court on such appeal would be determinative of all the issues in the instant proceedings.

The decision of this Court in the above mentioned case was adverse to the Small Business Administration and is reported in 276 F.2d 729 (Mar. 16, 1960). Thereafter the Referee rendered a Memorandum Opinion holding the chattel mortgage null and void.

On petition of the Small Business Administration, the cause was reopened and resubmitted to the Referee on a Statement of Agreed Facts and Contentions. The Referee again held the chattel mortgage invalid and rendered Findings of Fact, Conclusions of Law, and Order Declaring Chattel Mortgage Void.

After certain amendments to the Referee's Findings of Fact, the Small Business Administration petitioned the United States District Court for a review of the Referee's Order. The District Court returned the Record to the Referee for further proceedings and for further hearing. Thereafter the Referee rendered a Modification of and Supplemental Findings of Fact, Conclusions of Law and Order, again declaring the chattel mortgage void.

On review, the District Court reversed the Referee's ruling that the chattel mortgage was invalid, and thereafter the Court rendered Findings of Fact, Conclusions of Law and Order vacating the findings and conclusions of the Referee and holding valid the lien of the chattel mortgage.

The following facts in the case are not in dispute:

Prior to bankruptcy the bankrupt corporation was engaged in the business, broadly speaking, of furnishing precision machining of metal stock and castings for ultimate use in the missile industry. About the middle of December, 1955, the corporation made written application to the Small Business Administration for a loan. The loan was authorized and provided for a loan in the amount of $40,000 to be secured by a first chattel mortgage on all machinery, equipment, fixtures, and furniture then owned or therafter acquired by the corporation; an assignment of accounts receivable; and the individual guaranties of the president and vice-president of the corporation. The loan proceeds were to be used in part to pay certain existing debts of the corporation and in part for operating expenses. On June 25, 1956 the corporation executed and delivered to the Small Business Administration a promissory note in the principal amount of $40,000.00. On the same date the corporation executed and delivered to the Small Business Administration a chattel mortgage on all its personalty and an assignment of its accounts receivable.

On June 28, 1956 the Small Business Administration caused to be recorded in the office of the County Recorder for Los Angeles County a Notice of Intention to Chattel Mortgage. This Notice recited that the corporation intended to mortgage its personal property and stated that the consideration therefor was to be paid on July 16, 1956 at the office of the Small Business Administration in Los Angeles. The Notice did not state the amount of the consideration which was to be paid, nor did it state the mode or manner in which it was to be paid.

On June 29, 1956, one day after the Notice of Intention to Chattel Mortgage was filed, the chattel mortgage was recorded. On July 5, 1956 there was published in a newspaper of general circulation a notice of the chattel mortgage and of the transfer of consideration to take place on July 16, 1956. On July 16, 1956 the Small Business Administration disbursed loan proceeds of $25,000 by United States Treasury checks. Approximately $18,000 thereof went to the creditors of the corporation. These checks were payable to the corporation and the particular creditor jointly, were endorsed by the president of the corporation at the regional office of the Small

Business Administration in Los Angeles on July 12, 1956, and mailed to the particular creditor on July 16, 1956. The remaining sum, approximately $7,000.00, was disbursed by check to the corporation on July 16, 1956.

The remaining $15,000 of the authorized loan of $40,000 was never disbursed, and on September 21, 1956 the corporation requested, in writing, the cancellation of this undisbursed balance, and the same was cancelled on that date.

Basically it is the position of the appellant that the chattel mortgage here involved is void as against him in that it was not executed in full compliance with the provisions of Section 3440.1 of the Civil Code of the State of California, commonly known as the bulk sale statute. It is undisputed that prior to the recordation of the chattel mortgage the corporation was indebted to an existing creditor. The appellant stands in the shoes of such creditor under the provisions of Section 70, sub. e(1) of the Bankruptcy Act, Title 11 U.S.C.A. § 110, sub. e(1).

The appellant contends, in substance, that the District Court committed reversible error in holding certain findings of the Referee clearly erroneous and in modifying and changing the same, and erred in several of its conclusions of law.

We deem it unnecessary to review in this opinion all of the specifications of error relied upon by the Trustee but will restrict this opinion to certain selected ones.

The first to be considered relates to the nature or character of the business in which the bankrupt was engaged at the time of the execution and delivery of the chattel mortgage. Was the bankrupt a "machinist" within the meaning of that term as used in Section 3440.1 of the Civil Code of California? That statute, in pertinent part, provided:

   " * * * [the] mortgage of the fixtures or store equipment of a * * * machinist, * * *, or retail or wholesale merchant, is con-clusively presumed fraudulent and void as against the existing creditors of the * * * mortgagor, unless before the consummation of the * * * mortgage, * * * the mortgagor, or the intended * * * mortgagee does all of the following * * *."

The Referee made specific and detailed findings of fact as to the character and nature of bankrupt's business, and in his conclusions of law found:

   "The bankrupt was a machinist within the meaning of that term in Section 3440.1 of the California Civil Code."

On review the District Court in its findings of fact on this subject adopted all of the findings of fact of the Referee and added this additional finding of fact:

   "nor was the bankrupt itself engaged in wholesale or retail merchandising or selling as a wholesale or retail merchant of either goods or services."

In its conclusions of law the District Court found:

   "The bankrupt was not a machinist and was not a retail or wholesale merchant within the meaning of those terms in California Civil Code § 3440.1 as in effect on the date of the events described in the Findings."

In its written decision the District Court made the following comment:

   "I am of the view that the findings of the Referee in this case invalidated the chattel mortgage of the Small Business Administration for failure to comply with § 3440.1 of the California Civil Code are clearly erroneous. (Rule 51(a), [sic] Federal Rules of Civil Procedure, General Order 47) This bankrupt was not a machinist or a retail or wholesale merchant. For this reason the provisions of the Section do not apply to him."

Since the District Court adopted in its findings of fact on this subject all of the

findings of fact of the Referee, it is difficult for us to see how the District Court could have concluded that such findings of fact of the Referee were "clearly erroneous." We recognize, of course, that neither General Order 47 nor the provisions of Rule 52(a), 28 U.S.C.A. restrict in any way the power and duty of the District Court to set aside an erroneous conclusion of law of a Referee in Bankruptcy. However, we have reached the conclusion that the Referee's conclusion of law was correct and that the District Court erred in its conclusion of law and in setting aside the conclusion of law of the Referee that the bankrupt was a machinist within the meaning of that term in Section 3440.1 of the California Civil Code. The additional finding of fact made by the District Court, and above quoted, is not supported by the evidence and is contrary to other findings of fact made by the Referee and adopted by the District Court.

Since the context of Section 3440.1 does not require that the word "machinist" must be given a special or unusual meaning, the word is to be given its natural or ordinary meaning. Furthermore, in the context of the statute the word "machinist" cannot be equated with the words "retail or wholesale merchants" which appear in the statute. It appears to us that the legislative purpose of including the word "machinist" in the statute was to extend the protection afforded by the statute to creditors of those engaged in the machine shop business. The findings of fact of the Referee adopted by the District Court demonstrate that the bankrupt was engaged in such business. Among such findings are that the bankrupt was engaged in the business of precision machining of metal stock and castings; that the work of the bankrupt was to be according to blueprints and specifications furnished by its customers; that the bankrupt did not manufacture any product of its own design, or of others, for retail or wholesale sale; that in the event the work product of the bankrupt failed to meet contract specifications, it would be rejected by the prime contractor and returned to the bankrupt for reworking to meet specifications; that the bankrupt's product primarily was its technical skill and facilities and precision machining of individual parts on specific job orders for eventual subassembly by others; and that the bankrupt kept no general stock-in-trade and was not engaged in the business of buying raw materials and transforming them into other goods for sale to wholesalers or retailers. To conclude under such findings that the bankrupt was not a "machinist," within the meaning of that term in Section 3440.1, would be to completely emasculate the word "machinist" from the statute.

We hold that the provisions of Section 3440.1 were applicable and did apply to the bankrupt at the time of the execution and delivery of the chattel mortgage.

Having concluded that the provisions of Section 3440.1 applied to the bankrupt, the next point to be considered is whether or not there was substantial compliance with the provisions of the "bulk sales" law.

The provisions of the "bulk sales" statute, insofar as they are pertinent, are as follows:

"§ 3440.1 * * * [the] mortgage of the fixtures or store equipment of a * * * machinist, * * * is conclusively presumed fraudulent and void as against the existing creditors of the * * * mortgagor, unless before the consummation of the * * * mortgage, the * * * mortgagor, or the intended * * * mortgagee does all of the following:

"(a) Records at least 10 days before the consummation of the * * * mortgage, in the office of the county recorder * * * a notice of the intended * * * mortgage, which states the name and address of the intended * * * mortgagor and the name and address of the intended * * * mortgagee. The notice shall con-

tain a general statement of the character of the merchandise or property intended to be * * * mortgaged, and show the date and place where the purchase price or consideration is to be paid.

"(b) Publishes at least once a copy of the notice in a newspaper of general circulation * * *. The publication shall be completed not less than five days before the date of the intended * * * mortgage."

Section 3440.1 was enacted for the benefit of creditors of those engaged in the pursuits or types of business enumerated in the statute. See Jeffery v. Volberg, 159 Cal.App.2d 815, 324 P.2d 964 (1958); and Mitchell v. Setzler, 84 Cal.App.2d 716, 191 P.2d 523. This Court stated in Bumb v. United States, supra, 276 F.2d at p. 734:

"The object of the statute is: (1) to furnish creditors of the intended mortgagor the period of at least ten days within which to levy attachment or execution on the property to be mortgaged, and (2) to garnish or levy on the proceeds of the mortgage in the event provision is not made for the payment of the claims presented."

To the same effect, see Basic Tool Industries, Inc. v. Wikle, 298 F.2d 129 (9th Cir. 1961).

The District Court found that the note and mortgage were made, executed, delivered, and recorded more than ten days prior to July 16, 1956; that the "Notice of Intention to Chattel Mortgage" was recorded one day before the recordation of the mortgage and stated that notice was given pursuant to the provisions of § 3440.1 that the bankrupt "intends to place a chattel mortgage" upon the fixtures and equipment, that the bankrupt is the "intended mortgagor," Small Business Administration is the "intended mortgagee," and that the "consideration" for said chattel mortgage is to be paid on the 16th day of July, 1956 at the stated address of the Small Busi-

ness Administration; that $25,000 of the proceeds of the loan were disbursed by six United States Treasury checks drawn by the Small Business Administration; that five of these checks approximating $18,000 were made payable jointly to the bankrupt and a then existing specified creditor; that four days before the date fixed in the recorded Notice of Intention to Chattel Mortgage, to wit: on July 12, 1956, each of said checks was endorsed on behalf of the bankrupt by its president at the office of the Small Business Administration at Los Angeles; and that on July 16, 1956, the date fixed in the recorded Notice of Intention to Chattel Mortgage, the five checks were mailed to the other payees indicated thereon. The sixth check, in the approximate amount of $7,000.00, was made payable to the bankrupt and mailed to it on July 16, 1956. The above findings are substantially the same as the findings made by the Referee. The Referee concluded that the chattel mortgage was not executed in substantial compliance with § 3440.1 and was void. The District Court concluded that there was compliance in all respects with the requirements of § 3440.1 and that the chattel mortgage was valid.

In our view, the efficacy of the statute would be defeated and the rights of creditors seriously impaired were it to be held that the chattel mortgage in this case was executed in substantial compliance with the provisions of the statute.

The purpose of the recordation of the Notice of Intention to Chattel Mortgage is to put unsecured creditors of the mortgagor on notice of the impending chattel mortgage and to afford them an opportunity to levy writs of execution or attachment on the property intended to be mortgaged or on the consideration to be paid for the chattel mortgage. In the instant case, the Notice of Intention to Chattel Mortgage in respect to consideration, stated only that it would be paid at a stated time and place. In Bumb v. United States, supra,

this Court stated, 276 F.2d at pp. 734–735:

"The only reasonable interpretation which can be placed on the notice is that the entire consideration to be paid would be paid in lawful money of the United States * * *. * * * and if the consideration was to be other than lawful money of the United States the notice should likewise have so stated. * * *"

Such information is most important to an unsecured creditor in determining whether to levy a writ of execution or attachment on the property intended to be mortgaged or to waive such right and levy on or garnish the consideration to be paid when it passes on the date fixed in the notice from the mortgagee to the mortgagor. In Mitchell v. Setzler, 84 Cal.App.2d 716, 191 P.2d 523, the Court stated, at p. 526 of 191 P.2d, as follows:

" * * * In order that title may pass, free from claims of the creditors of the seller, the sale must be made substantially as stated in the notice. The creditor is thus afforded an opportunity to present his claim for payment and, if payment is not arranged, to levy upon the money, when it passes to the seller, instead of upon the property. * * *"

Here the consideration was paid in the form of six checks drawn on the Treasury of the United States, five of which were made payable jointly to the bankrupt and a named existing creditor and the sixth made payable to the bankrupt. Were such checks subject to attachment at the instance of a creditor of the bankrupt? We think not.

▇▇▇ Under California law, one of the purposes of the remedy of attachment is to afford an unsecured creditor of a debtor security for his demand. American Industrial Sales Corporation v. Airscope, Inc., 44 Cal.2d 393 (1955) 282 P.2d 504, 49 A.L.R.2d 1344. We have found no Federal statute which purports to authorize the issuance by a State Court of a writ of execution or attachment on checks drawn on the Treasury of the United States. Even if there is such a statute, California law does not provide for the levy of such writ on checks drawn on the Treasury of the United States. Section 542 of the Code of Civil Procedure of the State of California outlines the manner in which a writ of attachment or execution is to be executed on specified types of property belonging to, standing in the name of or in the possession of the defendant, or in which the defendant has an interest. Paragraph 8 of said Section is titled "Commercial paper." This paragraph relates only to "Checks, drafts, money orders and other orders for the withdrawal of money *from a banking corporation or association,* which are in the possession of and *payable to the defendant or judgment debtor on demand* * * *." (Emphasis added) The Treasury of the United States is not a banking corporation or association. Further, Paragraph 8 relates only to checks, drafts, etc. which are payable to the defendant or judgment debtor on demand. Here five of the Treasury checks were made payable jointly to the bankrupt and a named creditor, but on July 12, 1956 the bankrupt endorsed said checks so that on July 16, 1956 said checks were payable not to the bankrupt but to the other payees named therein.

▇▇▇ It is settled law in California that "[p]roceedings by attachment or garnishment are creatures of statute. They have only the scope which the legislature has chosen to accord to them, and cannot be extended to cases not mentioned in the statute. A cardinal rule of the law of attachment and garnishment, therefore is that the statutory provisions relating thereto must be strictly construed and followed." Cal. Jur.2d, Vol. 5, title "Attachment and Garnishment," p. 598.

In addition to the foregoing, it should also be noted that the execution, delivery and recordation of the chattel mortgage many days prior to the consummation of the transaction might reasonably confuse and mislead creditors into the belief that the transaction had been consummated, and thus cause them to

forego their rights to levy attachment or execution on the property covered by the recorded chattel mortgage. Furthermore, such premature recordation might place on a creditor who caused a writ of attachment or execution to be levied after June 29, 1956 and on or prior to July 16, 1956 on the property intended to be mortgaged, the burden of proving as against the Small Business Administration that its prima facie lien on the mortgaged property was invalid because the consideration for the chattel mortgage had not been paid.

We hold that the Referee properly concluded that the chattel mortgage was not executed in substantial compliance with § 3440.1 and that the chattel mortgage was void. The District Court erred in vacating and setting aside the Order of the Referee.

In view of our conclusion, we deem it unnecessary to consider the appellant's further ground that the full consideration for the chattel mortgage was the sum of $40,000 instead of the $25,000 which was disbursed on July 16, 1956 and, hence, a substantial deviation in the manner of payment of the consideration.

We have considered appellee's contention that the transaction was not covered by § 3440.1 because it was analogous to an assignment for the benefit of creditors and, therefore, not subject to the provisions of said Section. We find such contention without merit. Likewise, we find without merit appellee's contention that "since two-thirds of the consideration passed to pre-existing creditors of the bankrupt, the loan transaction was *pro tanto* outside of the statute, making SBA's claim valid *pro tanto*." On this point, see Basic Tool Industries, Inc. v. Wikle, supra.

The Orders of the District Court vacating and setting aside the findings of fact, conclusions of law and order of the Referee declaring the chattel mortgage void are reversed, and the bankruptcy proceeding is remanded to the Referee for further proceedings.