**In re Harold Robert PRITCHARD, fdba Yankee Pedaler and Dorothy Helen Pritchard, fdba Valley Bicycle Exchange, Bankrupts.**

**Norman E. STOLBA, Trustee in Bankruptcy, Plaintiff,**

v.

**Mario MASTRANDREA, Defendant.**

**Bankruptcy No. 77–01577–JD(A).**

United States Bankruptcy Court, C. D. California.

Feb. 10, 1981.

Robinson & Wolas, Los Angeles, Cal., for plaintiff.

Tibor I. Toczauer, Tarzana, Cal., for defendant.

## MEMORANDUM OF DECISION

JAMES R. DOOLEY, Bankruptcy Judge.

In this action the trustee seeks to invalidate the pre-bankruptcy sale by the bankrupts to the defendant of the assets of Valley Bicycle Exchange. The trustee relies upon the following two grounds:[1]

(1) That the defendant did not comply with relevant provisions of Division 6 of the California Commercial Code requiring that certain notices be made in connection with the making of a bulk transfer;

(2) That as a result of the sale the defendant received a voidable preference pursuant to Section 60 of the Bankruptcy Act of 1898, as amended, to the extent that defendant received property in exchange for cancellation of indebtedness.

This court has concluded that the first ground upon which the trustee relies is sustained by the evidence; and since the first ground alone is sufficient to invalidate the sale, the court will not consider the second ground upon which the trustee relies.

## FACTS

On February 16, 1977 the bankrupts filed in this court a voluntary petition in bankruptcy. Prior to bankruptcy the bankrupts had owned and operated as a sole proprietorship the Valley Bicycle Exchange, which was engaged in selling at retail new and used bicycles. On or about December 8, 1976, the bankrupts sold the Valley Bicycle Exchange and its assets to the defendant; and the Bill of Sale relating to said transaction provided as follows:

"Merchandise Bulk Sale, December 8, 1976, all Bicycle Parts, Accessories, Bicy-

---

1. In the Second Cause of Action of his complaint, the trustee also contended that the transfer of the assets of Valley Bicycle Exchange to defendant constituted a fraudulent conveyance under applicable provisions of state and federal law. However, during opening argument, counsel for the trustee abandoned this cause of action.

cles, Name of Business including name Valley Bicycle Exchange, all tools & fixtures located at 13556 Roscoe Blvd., Van Nuys, California.

Seller to pay all her prevous (sic) debts, bills and obligations; Buyer is not to be held liable for any of bills, debts of commitments of previous business before December 8, 1976.

For consideration of $10,000.00 (Paid $8,000.00 canceled note, $2,000.00 cash)."

Within a month prior to the sale of the Valley Bicycle Exchange to defendant, the bankrupts had purchased 50 new bicycles; and at the time of the sale, all or most of the purchase price of these bicycles was owed to Borg-Warner Acceptance Corporation (hereinafter "Borg-Warner").[2]

Following the sale, Borg-Warner appears to have obtained a Writ of Possession from the Los Angeles County Superior Court and recovered 36 of the 50 bicycles pursuant to said Writ. Thereafter, on October 6, 1977, a Judgment was filed by the Superior Court in the case of *Borg-Warner Acceptance Corporation v. Mario Mastrandrea, et al.*, No. NWC 55188, which read in part as follows:

"... On hearing evidence submitted and arguments of counsel, it is hereby ordered and ADJUDGED that plaintiff Borg-Warner Acceptance Corporation is vested with title to the 36 bicycles heretofore received by it pursuant to Writ of Possession issued by this Court and that plaintiff recover from defendant MARIO MASTRANDREA the sum of $848.70 in damages, each side to bear its own costs. Findings of fact and conclusions of law were waived by both sides."

Sometime during 1977 the defendant resold the Valley Bicycle Exchange and its assets for $4,000.00.

## FAILURE TO COMPLY WITH BULK SALES LAW

It is undisputed that the sale of the assets of Valley Bicycle Exchange to defendant on or about December 8, 1976 constituted a bulk transfer within the meaning of Section 6102 of the California Commercial Code. It is also clear that the defendant failed to comply with the notice provisions of Sections 6105 and 6107 of the California Commercial Code. Defendant gave no notice whatsoever to creditors prior to the sale; nor did the defendant at any time record in the office of the Los Angeles County Recorder any notice of the sale. Although defendant caused a notice to be published in the Valley Green Sheet after the sale had been consummated, and although defendant applied to the Board of Equalization to have the tax permit transferred to his name, this was clearly insufficient. Cf. *Danning v. Daylin, Inc.*, 488 F.2d 185 (9th Cir. 1973); *Basic Tool Industries, Inc. v. Wikle*, 298 F.2d 129 (9th Cir. 1961); *Reed v. Anglo Scandinavian Corporation*, 298 F.Supp. 310 (E.D.Calif.1969); *Associated Creditors' Agency v. Dunning Floor Covering, Inc.*, 265 Cal.App.2d 558, 71 Cal.Rptr. 494 (1968). As the Court of Appeals for the Ninth Circuit said in *Danning v. Daylin, Inc., supra* (488 F.2d page 187):

"When a transaction falls within the scope of Section 6102, the transferee must give notice of the transaction to the transferor's creditors, giving them time to investigate the proposed transfer and to protest if necessary. §§ 6105 and 6107. Failure to give notice renders the bulk transfer 'fraudulent and void' against the transferor's creditors. § 6105."

■ Where there is a failure to comply with the notice requirements of the bulk sales law, the good faith of the parties is immaterial. *Danning v. Daylin, Inc., supra,*

---

**2.** The evidence of record does not establish with certainty the details of this purchase. The bankrupt, Dorothy H. Pritchard, testified, *inter alia*, that a down payment of about ten percent was made in the approximate amount of $431.00; thus, from her testimony it would seem that the total purchase price for the 50 bicycles was in the neighborhood of $4,300.00.

It also appears that the check for the down payment on the 50 bicycles "bounced"; however, Mrs. Pritchard testified that this check was later made good. Mrs. Pritchard also testified that Borg-Warner had a security interest in the 50 bicycles and that defendant was advised of the existence of this security interest. Defendant, however, denies this.

488 F.2d at page 190; *Bumb v. United States,* 276 F.2d 729, 734 (9th Cir. 1960); *Markwell & Co. v. Lynch,* 114 F.2d 373, 374 (9th Cir. 1940).

■ Since the defendant failed to comply with the notice requirements of the bulk sales law, the trustee may recover under Section 70(e) of the Bankruptcy Act of 1898, as amended, former 11 U.S.C. § 110(e), which provides in part as follows:

"e. (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate . . . The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, . . . "

Under the above-quoted statute the trustee has the option of recovering the property transferred or its value. *Schainman v. Dean,* 24 F.2d 475, 476 (9th Cir. 1928), *cert. denied,* 278 U.S. 598, 49 S.Ct. 7, 73 L.Ed. 527; see also, *Markwell & Co. v. Lynch, supra; Reed v. Anglo Scandinavian Corporation, supra.* Since the defendant resold the assets of Valley Bicycle Exchange during 1977, compensating the trustee for the value of the assets transferred is the only practicable relief which can be granted.

The parties are in sharp dispute as to the value of the assets transferred. Although the purchase price paid by defendant was $10,000.00, defendant contends that in determining any relief to be granted to the trustee, there should be deducted from this purchase price: (1) the $2,000.00 which he paid to the bankrupts in cash [3]; (2) various expenditures which he made after the sale for back wages to employees, past due rent, and for other purposes; (3) the value of the bicycles which he turned over to Borg-Warner pursuant to the Writ of Possession issued by the Superior Court plus the moneys he was required by the Superior Court judgment to pay to Borg-Warner.

The purchase price [4] which defendant paid for the assets of Valley Bicycle Exchange would seem to establish, *prima facie,* the value of these assets. In *Reed v. Anglo Scandinavian Corporation, supra,* the court granted summary judgment in favor of the trustee for $5,489.64, which was the purchase price of the merchandise transferred to the defendant in that case.

■ In the view of this court, the value of the assets sold to the defendant and thus the relief to be granted to the trustee, are not affected by the fact that a portion of the purchase price was paid to the bankrupts in cash. The major purpose of the bulk transfer statutes ". . . is to afford the merchant's creditors an opportunity to satisfy their claims before the merchant can transfer his assets to a bona fide purchaser and vanish with the proceeds of the sale". See *Reed v. Anglo Scandinavian Corporation, supra,* 298 F.2d at page 313. This

---

**3.** Although the defendant testified that he gave the bankrupt, Dorothy Helen Pritchard, $2,000.00 in cash, said bankrupt testified that she only received about $750.00 in cash, and that the remainder was made up by the defendant paying other bills.

**4.** The parties to the transfer in this case appear to have arrived at the purchase price of $10,-000.00 in different ways. The bankrupt testified that she attributed $4,000.00 of the purchase price to the value of the inventory and $6,000.00 to good will. The defendant, on the other hand, testified that he did not consider good will as part of the purchase price; that the used bicycles and used inventory were worth no more than $4,000.00; and that the 50 new bicycles, most of which were later reclaimed by Borg-Warner, were worth about $5,500.00. While Valley Bicycle Exchange had been operating for about 13 years, it had been at its location at the time of the transfer for less than 2 years; although the old location and the new location were within one mile of each other.

purpose would be frustrated if the transferee could avoid the effect of the statute merely by paying the transferor in cash. The record in this case does not show that any of the cash paid by the defendant to the bankrupts was ultimately turned over to the trustee in bankruptcy for the benefit of creditors.

■ Nor can the value of the assets transferred be reduced by payments made to creditors or other expenditures by the transferee after the transfer has been consummated. In *Association Creditors Agency v. Dunning Floor Covering, Inc., supra,* the court made it clear that it is the value of the assets on the date of the illegal transfer that controls and not the value at the time of a later resale. Moreover, the Bill Of Sale in this case specifically provided that "Seller to pay all her prevous (sic) debts, bills and obligations; Buyer is not to be held liable for any of bills, debts of commitments of previous business before December 8, 1976".

However, this court is of the opinion that the fact that Borg-Warner, acting pursuant to a Writ of Possession issued by the Superior Court, reclaimed 36 new bicycles from defendant and the fact that defendant was ordered to pay Borg-Warner $848.70 in damages (apparently for certain other bicycles that Borg-Warner could not reclaim) should be taken into consideration in determining the value of the assets at the time of transfer. Considering these facts, the court fixes the value of Valley Bicycle Exchange and its assets at the time of transfer at $5,500.00. Such a determination gives full effect to the judgment of the Superior Court, as this court is required to do. 28 U.S.C. § 1738; *Huron Corp. v. Lincoln Co.,* 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941); *Davis v. Davis,* 305 U.S. 32, 39–40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938); *Government Personnel Mutual Life Insurance Company v. Kaye,* 584 F.2d 738 (5th Cir. 1978); Note, 54 Harv.L.Review 1076.

This Memorandum of Decision contains findings of fact and conclusions of law as required by Bankruptcy Rule 752(a).

Judgment should be entered in favor of the plaintiff and against the defendant for the sum of $5,500.00 plus interest on the latter sum at 7% per annum from December 8, 1976 until judgment is entered.